IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-273-BO

| | |
|---|---|
| JEROME BIRDSONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| JESSE J. EMORY, individually and as an | ) |
| employee of the City of Wilson, North | ) |
| Carolina; and THE CITY OF WILSON, | ) |
| NORTH CAROLINA, | ) |
| | ) |
| Defendants. | ) |

This cause comes before the Court on defendants' motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded, defendants

have replied, and the matter is ripe for ruling. A hearing was held on the motion before the

undersigned on April 13, 2017, at Raleigh, North Carolina. For the reasons that follow,

defendants' motion is denied.

## BACKGROUND

On the evening of Friday June 29, 2012, plaintiff was walking down Lane Street in

Wilson, North Carolina after having made a purchase at Nancy's Market, a convenience store.

The area around the market is known to police for hand to hand drug sales. When plaintiff was

about one hundred feet from the market, a group of police officers got out of an unmarked van to

conduct a "jump out" – a tactic in which a group of police officers will quickly exit an unmarked

vehicle and attempt to engage people in an area in conversation. Plaintiff had previously been

stopped, questioned, and frisked as a part of a "jump out" and on this night continued walking

away from the market. Two officers, defendant Emory and Officer Snider, who is not named as a defendant, called out to plaintiff but did not give him a command to stop.

Plaintiff continued walking away from the officers and denies doing anything suspicious; Emory testified in his deposition that while plaintiff was walking away he could be seen engaging in furtive movements around his waistband. The officers began to run toward plaintiff and plaintiff began to run as well. Plaintiff contends that after running from the officers for a brief time he came back to the street and decided to give himself up in a public area. Plaintiff testified that after he stopped running he complied with a command from the officers to put his hands over his head. Plaintiff states that he was then struck from behind, lifted by one of the officers in the air, and slammed to the ground, injuring his right cheek. The officers have stated that they did not give plaintiff a command to put his hands on his head, that plaintiff did not put his hand on his head, and that plaintiff never stopped running on his own but rather was brought to the ground by Officer Snider in a "controlled fall" maneuver. Once on the ground plaintiff was handcuffed.

Plaintiff states that he was then strip searched on the street in plain view of others; the statement of witnesses who could see plaintiff being strip searched have been proffered by plaintiff. After being searched by both police officers and K-9, no weapons or contraband were found either on plaintiff or on the path that plaintiff took while being pursued by the officers. Plaintiff was briefly examined by emergency medical technicians (EMTs) and was then brought before a Wilson County magistrate who found probable cause based on defendant Emory's testimony to arrest plaintiff for willfully and unlawfully resisting, delaying and/or obstructing a police office in discharging or attempting to discharge a duty of his office in violation of N.C. Gen. Stat. § 14-223. Plaintiff was released without a bond and the charge was ultimately

2

dismissed by an assistant district attorney before trial. Two days following the incident, plaintiff sought medical treatment for the injury to his face and was diagnosed with a fracture to his right orbital bone.

Plaintiff filed this suit under 42 U.S.C. §§ 1983 and 1988 for violations of his federal constitutional rights, specifically his liberty interest in bodily integrity under the due process clause of the Fourteenth Amendment, his Fourth Amendment right to be free from excessive force and unreasonable search and seizure, and his Fourteenth Amendment right to due process prior to infliction of corporal punishment. Plaintiff has also alleged a § 1983 claim for malicious prosecution as well as state law claims for battery, gross negligence, and malicious prosecution/abuse of process. Defendants have moved for summary judgment in their favor on all claims and have raised the affirmative defense of qualified immunity.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is

genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations, however, will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

I.      Section 1983 and 1988 claims

Defendants contend, and plaintiff does not contest, that plaintiff's liberty interest, excessive force, and malicious prosecution claims are properly analyzed under a Fourth Amendment rubric as these claims all flow from his allegedly unreasonable seizure both at the time he was stopped and at the time he was arrested. *See Graham v. Connor*, 490 U.S. 386, 394-5 (1989); *see also Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (noting "there is no such thing as a '§ 1983 malicious prosecution' claim.").

Qualified immunity shields government officials from liability so long as they could reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Again, the facts are construed in the light most favorable to plaintiff. *Id.*

4

It is undisputed that plaintiff was seized by defendant Emery and Officer Snider. As there are genuine issues of material fact in the record as to whether a reasonable articulable suspicion existed to support plaintiff's seizure or whether probable cause existed to support plaintiff's arrest, the motion for summary judgment on plaintiff's Fourth Amendment and derivative claims is denied. *See Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992) (while determination of whether a right is clearly established is a legal question always answerable at summary judgment, where there are issues of fact with respect to the officer's conduct or its reasonableness summary judgment is inappropriate).

In order to justify a brief, investigatory stop of a citizen on a public street, an officer must have reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion is a less demanding standard than probable cause, but an officer "must be able to articulate more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000) (internal quotation marks omitted) (quoting *Terry*, 392 U.S. at 27). Although the character of the area and a subject's flight from officers will weigh in favor of a reasonable suspicion of criminal activity, *Wardlow*, 528 U.S. at 124, the record here, when taking the facts in the light most favorable to plaintiff, does not support finding that defendant Emery is entitled to qualified immunity at this stage. Plaintiff asserts that he was merely walking away from the officers, unhurriedly, when they called out to him, and it is undisputed that no command to stop was given prior to the chase. *See Florida v. Royer*, 460 U.S. 491, 498 (1983) (refusal to listen or answer police after being approached on the street does not provide a basis for detention). Plaintiff denies making "furtive" movements near his waistband and contends that he only began to run after the officers began to chase him. Further, as to the second step of the inquiry, a citizen's right to be free from

5

an investigatory seizure in the absence of a reasonable articulable suspicion of criminal activity was plainly established at the time of this incident.

Where, as here, an individual was arrested pursuant to an arrest warrant issued by a neutral and detached magistrate, the seizure will be found to be unreasonable only if the officer did not have probable cause to seek the warrant. *Malley*, 475 U.S. at 344 n.7 (1986) (issuance of a warrant does not "break the causal" chain between the complaint and the arrest). The question then is "whether a reasonably well-trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* at 345. Probable cause is a result of a practical, common-sense consideration of all of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). Probable cause "requires more than a bare suspicion" but less than evidence sufficient to convict. *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). It is an objective standard which "turns on two factors: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Smith*, 848 F.3d at 253 (internal quotation marks and citation omitted); *see also Graham v. Gagnon*, 831 F.3d 176, 183 (4th Cir. 2016) ("we have repeatedly held that arrest warrants do not confer immunity if it was objectively unreasonable to conclude there was probable cause for the arrest."). Only the information known to the officer at the time he sought the arrest warrant is relevant. *Smith*, 848 F.3d at 253.

Plaintiff's flight from defendant Emery and Officer Snider forms the basis for his arrest for resisting a public officer in violation of N.C. Gen. Stat. § 14-223. The elements of that crime are

1) that the victim was a public officer;

6

2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;

3) that the victim was discharging or attempting to discharge a duty of his office; 4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and

5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Sinclair*, 191 N.C. App. 485, 488–89 (2008) (citation omitted). "The third element of the offense presupposes lawful conduct of the officer in discharging or attempting to discharge a duty of his office." *Id.* (citation omitted). Because there is question of fact as to the validity of the *Terry* stop initiated against plaintiff, the Court finds there further to be a question of fact as to whether a reasonable officer would have found probable cause to arrest plaintiff for resisting a public officer. The state courts have held that flight from a consensual encounter cannot be used as evidence of a violation of §14-223, and that in the absence of a lawful investigatory stop an officer does not have sufficient evidence to charge resisting a public officer. *Id.* at 491-2; *see also State v. Joe*, 213 N.C. App. 148, 156 (2011), *vacated in part on other grounds,* 365 N.C. 538 (2012) (flight from consensual encounter not evidence of resisting a public officer charge). Accordingly, a determination as to whether qualified immunity is applicable to plaintiff's claims concerning his arrest are premature at this time.

The first question of the qualified immunity analysis as it relates to plaintiff's excessive force claim addresses whether the officers violated plaintiff's right to be free from seizure by excessive force. *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). Whether an officer used excessive force to effect a seizure is analyzed under an objective reasonableness standard, without regard to the officer's subjective intention or motivation. *Id.* at 477. A court does consider, however, the facts and circumstances confronting the officer, and it must focus its attention on the moment the force was employed. *Henry*, 652 F.3d at 531 (citations omitted).

7

Specific factors to be considered are the severity of the crime at issue, whether the suspect poses an immediate threat, and whether the suspect is actively resisting or attempting to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Whether the officer's conduct was reasonable is a question of law to be decided after determining "the relevant set of facts and draw[ing] all inferences in favor of the nonmoving party to the extent supportable by the record." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis removed).

At this stage of the proceeding, the record supports the presence of facts which, when viewed in the light most favorable to plaintiff, support a finding that the force employed when effecting plaintiff's seizure was excessive. Plaintiff's statements support that he had stopped running, that he had raised his hands above his head, that he was struck from behind by one of the officers with a blow, and that he was lifted into the air and slammed to the ground. The level of force allegedly employed to stop a stationary person who is not resisting was excessive. "Tackling a stationary individual, who is not resisting arrest or attempting to flee, constitutes excessive force in violation of the Fourth Amendment." *Geba v. Norris*, No. 2:14CV612, 2016 WL 8730898, at \*6 (E.D. Va. Apr. 4, 2016); *see also Sloan v. Dulak*, 868 F. Supp. 2d 535, 541 (W.D. Va. 2012) (listing cases holding same). The facts as viewed in the light most favorable to plaintiff further do not support defendant's belief that plaintiff was possibly armed or attempting to conceal contraband in his waistband. Thus, in the absence of fact finding as to whether plaintiff had stopped running and whether he was struck from behind and thrown to the ground, the Court cannot determine whether qualified immunity would apply.

Plaintiff further alleges that his being subjected to a strip search on the street in view of others violated his constitutional rights and has proffered evidence in support of such claim. *See, e.g.* Barnes Dep. at 37-38. "Strip searches of detainees are constitutionally constrained by due

process requirements of reasonableness under the circumstances." *Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir. 1981). The need for a particular search must be balanced against the invasion of rights it causes, and the scope of the search, the manner in which it was conducted, and the justification for the search must all be considered. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

Here, because "[t]he facts surrounding [plaintiff]'s strip search [are] inextricably intertwined with the facts surrounding his initial confrontation with the police [and] his arrest . . . it is impossible to isolate the inquiry into the constitutionality of the strip search from the other facts." *Abshire v. Walls*, 830 F.2d 1277, 1283 (4th Cir. 1987). Summary judgment is therefore inappropriate on plaintiff's due process claim.

Plaintiff has also alleged a policy or custom claim against the City and Emory in his official capacity. There is no respondeat superior liability under § 1983; rather, in order to hold a municipality liable for a violation of a person's constitutional rights, a plaintiff must demonstrate that the City was aware of the constitutional violation and either "participated in, or otherwise condoned, it." *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (*see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Municipal liability only results "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell* 436 U.S. at 694.

Defendants have proffered a number of training records to demonstrate that the City of Wilson has properly trained its police officers. *See* [DE 25-1]. Plaintiff claims, however, that the Wilson Police Department engaged in a pattern of conduct against plaintiff that amounts to harassment and that any violation of plaintiff's constitutional rights was the product of a policy or custom of the Wilson Police Department. In support, plaintiff points to his repeated seizures

9

and searches resulting from "jump outs" conducted by Wilson police officers, as well as evidence that Officer Snider was permitted to continue to work with the public in spite of personal problems and a recommendation that he seek mental health counseling. *See* Snider Dep. at 69-78. Plaintiff contends that the result of Officer Snider not receiving counseling was at least two incidents, plaintiff's and another – a depiction of which plaintiff has proffered as video evidence [DE 29], where an individual was unjustifiably slammed to the ground and detained. The Court finds that plaintiff has sufficiently rebutted defendants' evidence regarding proper training and that his *Monell* policy or custom claim may proceed.

II.    State law claims

Plaintiff has also filed state law claims for battery, gross negligence, and malicious prosecution/abuse of process. Defendants have raised the defense of public officer immunity. Because the question of qualified remains open as to the Fourth Amendment claims, the Court declines to consider whether the defense of governmental immunity applies to plaintiff's state law claims. *See Cooper v. Sheehan*, 735 F.3d 153, 160 (4th Cir. 2013) (merits of battery, gross negligence claims tied to reasonableness of officers' actions, and thus go forward with excessive force claims) (citing *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Bailey v. Kennedy*, 349 F.3d 731, 745 (4th Cir. 2003) (assault and battery claim available if officer used excessive force); *Beroth Oil Co. v. Whiteheart*, 173 N.C. App. 89, 99 (2005) (absence of probable cause element of malicious prosecution claim).

## CONCLUSION

In sum, genuine issues of material fact preclude a finding on the availability of the defenses of qualified immunity and public officer immunity under state law at this time.

10

Defendants' motion for summary judgment [DE 22] is therefore DENIED. The clerk is DIRECTED to refer this matter for pretrial conference.

SO ORDERED, this _2_ day of May, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE